# 23-_____

# United States Court of Appeals
# for the Second Circuit

GOOGLE LLC,

Petitioner

v.

STATES OF TEXAS, ALASKA, ARKANSAS, FLORIDA, IDAHO, INDIANA, KENTUCKY, LOUISIANA, MISSISSIPPI, MISSOURI, MONTANA, NEVADA, NORTH DAKOTA, PUERTO RICO, SOUTH CAROLINA, SOUTH DAKOTA, AND UTAH,

Respondents.

No. MDL 3010
Judge Karen K. Caldwell

## PETITION FOR A WRIT OF MANDAMUS
## TO THE UNITED STATES JUDICIAL PANEL
## ON MULTIDISTRICT LITIGATION

Eric Mahr
Andrew J. Ewalt
FRESHFIELDS BRUCKHAUS
DERINGER LLP
700 13th Street NW, 10th Floor

Neal Kumar Katyal
Jessica L. Ellsworth
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004

Washington, D.C. 20005
(202) 777-4500
(202) 777-4555 (Fax)
eric.mahr@freshfields.com
andrew.ewalt@freshfields.com

(202) 637-5600
(202) 637-5910 (Fax)
neal.katyal@hoganlovells.com
jessica.ellsworth@hoganlovells.com

*Counsel for Petitioner Google LLC*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, the Defendant-Petitioner Google LLC submits this Corporate Disclosure Statement.

Google LLC is a subsidiary of XXVI Holdings Inc., which is a subsidiary of Alphabet, Inc., a publicly traded company. No publicly traded company holds more than 10% of Alphabet's stock.

# TABLE OF CONTENTS

Page

CORPORATE DISCLOSURE STATEMENT ..............................................i

TABLE OF AUTHORITIES ...............................................................iv

PRELIMINARY STATEMENT ........................................................... 1

ISSUE PRESENTED ........................................................................ 6

RELIEF SOUGHT ........................................................................... 6

STATEMENT OF FACTS ................................................................. 6

    A.    The Panel Transfers Nineteen Actions Against Google
With Overlapping Factual And Legal Issues To The
Southern District Of New York ............................................. 6

    B.    Over A Two-Year Period, Judge Castel Makes
Substantial Progress Toward Resolving The Litigation
Based On The State Plaintiffs' Case ..................................... 8

    C.    Congress Passes The Venue Act, After Repeatedly
Striking Language That Would Have Made The Statute
Retroactive.................................................................... 10

    D.    The State Plaintiffs Seek, And Are Granted, A Remand
To The Eastern District Of Texas By The Panel................... 13

ARGUMENT ............................................................................... 14

I.    GOOGLE HAS A CLEAR AND INDISPUTABLE RIGHT
TO MANDAMUS BECAUSE THE PANEL COMMITTED
SERIOUS LEGAL ERRORS IN APPLYING THE VENUE
ACT RETROACTIVELY........................................................ 15

    A.    At *Landgraf*'s First Step, The Panel Wrongly Discounted
Evidence Of The Venue Act's Drafting History, Which
The Supreme Court Has Said Is Relevant To The
Retroactivity Analysis ...................................................... 16

B.    At *Landgraf*'s Second Step, The Panel Wrongly
        Concluded That All Procedural Rules Apply To Pending
        Cases, And Therefore Failed To Consider Whether The
        Venue Act Operates Retroactively ...................................................... 23

II.    A WRIT OF MANDAMUS IS THE ONLY ADEQUATE
        MEANS FOR GOOGLE TO SEEK REVIEW OF THE
        PANEL'S ORDER ....................................................................................... 28

III.   A WRIT OF MANDAMUS IS THE APPROPRIATE
        REMEDY TO REVERSE THE PANEL'S ERRONEOUS
        RULING ...................................................................................................... 29

CONCLUSION ................................................................................................... 31

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

CASES:

*American Exp. Warehousing, Ltd. v. Transamerica Ins. Co.*,
   380 F.2d 277 (2d Cir. 1967) ........................................................... 29

*Bowen v. Georgetown Univ. Hosp.*,
   488 U.S. 204 (1988) ......................................................................... 3

*Cheney v. United States Dist. Ct. for D.C.*,
   542 U.S. 367 (2004) ........................................................... 1, 14, 28

*Cooter & Gell v. Hartmarx Corp.*,
   496 U.S. 384 (1990) ......................................................................... 1

*Doe v. Chao*,
   540 U.S. 614 (2004) ....................................................................... 19

*Ex parte Collett*,
   337 U.S. 55 (1949) ................................................................... 26, 27

*Fernandez-Vargas v. Gonzales*,
   548 U.S. 30 (2006) ................................................................... 22, 23

*Graham v. Johnson*,
   168 F.3d 762 (5th Cir. 1999) ......................................................... 22

*Gulf Oil Corp. v. Copp Paving Co.*,
   419 U.S. 186 (1974) ....................................................................... 19

*Hamdan v. Rumsfeld*,
   548 U.S. 557 (2006) ....................................................................... 19

*In re Air Crash Disaster at Tenerife*,
   461 F. Supp. 671 (J.P.M.L. 1978) ................................................. 26

*In re Apple, Inc.*,
   602 F.3d 909 (8th Cir. 2010) (per curiam) .................................... 29

*In re City of New York*,
   607 F.3d 923 (2d Cir. 2010) ........................................... 5, 6, 15, 29

*In re Digital Advert. Antitrust Litig.*,
   555 F. Supp. 3d 1372 (J.P.M.L. 2021) ........................... 2, 7, 25, 26

*In re: Google Digit. Advert. Antitrust Litig.*,
   No. 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022) .......... 9

*In re Long Island Lighting Co.*,
129 F.3d 268 (2d Cir. 1997) .................................................. 30

*In re United States*,
10 F.3d 931 (2d Cir. 1993) .................................................. 15

*In re Volkswagen of Am., Inc.*,
545 F.3d 304 (2008) .................................................. 29, 30, 31

*In re von Bulow*,
828 F.2d 94 (2d Cir. 1987) .................................................. 30

*In re Warrick*,
70 F.3d 736 (2d Cir. 1995) .................................................. 28, 30

*In re Wilson*,
451 F.3d 161 (3d Cir. 2006) .................................................. 26

*INS v. Cardoza-Fonseca*,
480 U.S. 421 (1987) .................................................. 17

*INS v. St. Cyr*,
533 U.S. 289 (2001) .................................................. 3

*Jama v. ICE*,
543 U.S. 335 (2005) .................................................. 19

*Landgraf v. USI Film Prods.*,
511 U.S. 244 (1994) .................................................. *passim*

*Lindh v. Murphy*,
521 U.S. 320 (1997) .................................................. 4, 16, 22

*Martin v. Hadix*,
527 U.S. 343 (1999) .................................................. *passim*

*Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
461 U.S. 190 (1983) .................................................. 19

*Padovani v. Bruchhausen*,
293 F.2d 546 (2d Cir. 1961) .................................................. 29

*Rabin v. Wilson-Coker*,
362 F.3d 190 (2d Cir. 2004) .................................................. 17

*Red Bull Assocs. v. Best W. Int'l, Inc.*,
862 F.2d 963 (2d Cir. 1988) .................................................. 31

*Rivers v. Roadway Express, Inc.*,
  511 U.S. 298 (1994) ................................................ 19, 20, 21, 22

*Scheidemann v. INS*,
  83 F.3d 1517 (3d Cir. 1996) ............................................... 17

*SEC v. Rajaratnam*,
  622 F.3d 159 (2d Cir. 2010) ............................................... 15

*SongByrd, Inc. v. Estate of Grossman*,
  206 F.3d 172 (2d Cir. 2000) ............................................... 31

*U.S. Fid. & Guar. Co. v. United States*,
  209 U.S. 306 (1908) ....................................................... 16

*United States v. Google LLC*,
  No. 123CV108LMBJFA, 2023 WL 2486605 (E.D. Va. Mar. 14, 2023) ............ 30

*United States v. National City Lines, Inc.*,
  337 U.S. 78 (1949) ........................................................ 26

**STATUTES:**

28 U.S.C. § 1404 .............................................................. 29

28 U.S.C. § 1404(a) ....................................................... 26, 30

28 U.S.C. § 1407 .............................................................. 10

28 U.S.C. § 1407(a) ........................................................ 6, 7

28 U.S.C. § 1407(e) ....................................................... 5, 28

28 U.S.C. § 1407(g) .................................................... 3, 6, 10

28 U.S.C. § 1407(h) .......................................................... 10

Civil Rights Act of 1990,
  S. 2104, 101st Cong., 2d Sess., § 2(b)(1) (1990) ......................... 20

Consolidated Appropriations Act, 2023,
  Pub. L. No. 117-328, 136 Stat. 4459 .................................. 10, 13

**RULE:**

R.P.J.P.M.L 10.3(a) .......................................................... 13

Page(s)

OTHER AUTHORITIES:

168 Cong. Rec. H8173 (daily ed. Sept. 28, 2022) ................................ 12

168 Cong. Rec. H8252 (daily ed. Sept 29, 2022) ................................ 11

168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022) ......................... 12, 18

168 Cong. Rec. S2935 (daily ed. June 14, 2022) ........................... 11, 18

168 Cong. Rec. S7328 (daily ed. Dec. 19, 2022) ................................ 11

168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022) ................. 4, 11, 12, 18

168 Cong. Rec. S10007 (daily ed. Dec. 21, 2022) .............................. 12

168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022) ......................... 12, 13

168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022) ......................... 12, 18

H.R. 3460, 117th Cong. ...................................................................... 11, 18

H.R. 3843, 117th Cong. ............................................................................ 12

S. 1787, 117th Cong. .................................................................... 10, 11, 17

## PRELIMINARY STATEMENT

This is the rare case where a writ of mandamus is appropriate. To be sure, a party seeking mandamus must demonstrate that it has a "clear and indisputable" right, there are "no other adequate means" of relief, and the writ is otherwise "appropriate under the circumstances." *Cheney v. United States Dist. Ct. for D.C.*, 542 U.S. 367, 380-381 (2004). And Google recognizes that a district court—or in this case, the Judicial Panel on Multidistrict Litigation (JPML, or the Panel)—ordinarily has wide discretion to determine whether transfer of venue is appropriate. But as the Supreme Court has stressed, a court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law," *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990), and even broad discretion can be exercised in a manner that "justif[ies] the invocation of th[e] extraordinary remedy" of mandamus, *Cheney*, 542 U.S. at 380 (citation omitted).

That is particularly the case here, where the JMPL's decision to remand this case—after nearly two years of pre-trial coordination as part of a multi-district litigation (MDL) and in the midst of ongoing discovery in that MDL—was based entirely on a question of law: how to correctly interpret Congress' recent amendment to the MDL statute. Mandamus is a necessary safety valve in the extraordinary situation presented here, where the remand order was based on a retroactive application of a law that Congress did not give retroactive effect.

In 2021, Google moved the Panel to centralize 19 actions alleging similar, antitrust-related claims before one district court for pretrial purposes, including an action by State Plaintiffs. The Panel did so, centralizing the actions before Judge Castel in the Southern District of New York. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d 1372, 1380 (J.P.M.L. 2021). At the time it transferred the State Plaintiffs' suit to the MDL, the Panel determined the claims in that suit presented an "especially compelling" case for consolidation due in part to their "substantial overlap" with other claims in the newly-created MDL. *Id.* at 1378-80.

Given that overlap, centralization served to "promote the just and efficient conduct of the litigation by eliminating duplicative discovery and avoiding the risk of inconsistent rulings on pretrial matters." *Id.* at 1375. More broadly, the Panel concluded that "[c]entralization will enhance the overall convenience of the parties, the witnesses, and the courts." *Id.* at 1378. Since then, Judge Castel has made substantial progress toward resolving the litigation based on the State Plaintiffs' case. Indeed, Judge Castel centered the MDL around the State Plaintiffs' Third Amended Complaint, which he said would serve as the lead pleading in the MDL. *See* Pre-Trial Order No. 1, ECF No. 4.

Yet, two weeks ago, the Panel abruptly changed course. It granted the State Plaintiffs' motion to remand this action to the Eastern District of Texas based on the Panel's conclusion that a statutory amendment passed by Congress in December

2022 applied retroactively to transfers that pre-date the amendment's enactment. Remand Order, *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. June 5, 2023), ECF No. 250 ("Remand Order"). The amendment, part of the Consolidated Appropriations Act of 2023 signed by President Biden on December 29, 2022, added the words "or a State" to 28 U.S.C. §1407(g), thereby exempting state antitrust enforcement actions from the MDL statute. Despite the fact that the State Plaintiffs had actively engaged in the MDL proceedings up to the Panel's ruling, *including for months after the enactment of this provision*, the Panel accepted the State Plaintiffs' argument that the amendment applies retroactively to undo transfers to a MDL that had already occurred and requires remand of this action.

Giving this provision, known as the Venue Act, retroactive effect to unwind already completed transfers to a MDL conflicts with the Supreme Court's two-step framework for assessing retroactivity set out in *Landgraf v. USI Film Prods.*, 511 U.S. 244 (1994). Although Congress is empowered to enact retroactive legislation, retroactive statutes raise such "special concerns," *INS v. St. Cyr*, 533 U.S. 289, 315 (2001), that "congressional enactments . . . will not be construed to have retroactive effect unless their language *requires* this result," *Bowen v. Georgetown University Hospital*, 488 U.S. 204, 208 (1988) (emphasis added). Under *Landgraf*'s two-step framework, courts first examine whether Congress "expressly prescribed the statute's proper reach." 511 U.S. at 280. If it did not, the court determines whether

the new statute "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* If the statute would have such an effect, it may not be applied retroactively unless Congress clearly directed that it should. Consequently, those "cases where [the] Court has found truly 'retroactive' effect adequately authorized by a statute have involved statutory language that was so clear that it could sustain only one interpretation." *Lindh v. Murphy*, 521 U.S. 320, 328 n.4 (1997) (citation omitted). The Venue Act is *not* one of those statutes.

Indeed, Congress considered and repeatedly rejected explicit statutory provisions that would have made the law retroactive. *See, e.g.*, 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022) (striking a provision of the Venue Act that would have said "[t]he amendments made by subsection (a) *shall apply to any matter pending on*, or filed on or after, *the date of enactment* of this Act"). Congress's repeated deletion of language that would have made the Venue Act apply retroactively shows that Congress did not intend the Act to undo MDL transfers predating its enactment or to unwind post-transfer MDL proceedings in which a judge has invested significant time and resources addressing a state's antitrust complaint. And even if Congress had been unclear about the Venue Act's temporal reach, the Supreme Court's retroactivity precedents instruct that a procedural change

enacted while a case is pending may not undo or invalidate steps taken before the enactment, unless explicitly required by the statute's text. *See Landgraf*, 511 U.S. at 275 n.29. Yet that is what the Panel did here, in applying the Venue Act to retroactively unwind the Panel's earlier transfer of the State Plaintiffs' case.

This Court should grant the petition for mandamus relief. Google has a clear and indisputable right to relief because the Panel committed serious errors in concluding that, despite the presumption against retroactive application of a new statute, the Venue Act applies retroactively here. The Panel's reasoning is foreclosed by Supreme Court precedent and common sense. For that reason, it amounts to a "judicial usurpation of power or a clear abuse of discretion." *In re City of New York*, 607 F.3d 923, 943 (2d Cir. 2010).

Google has no other adequate means of relief because the MDL statute expressly states "[n]o proceedings for review of any order of the panel may be permitted except by extraordinary writ." 28 U.S.C. § 1407(e). And for orders after an initial transfer, writ petitions "shall be filed only in the court of appeals having jurisdiction over the transferee district"—which, because of the Panel's earlier transfer of the State Plaintiffs' case to the Southern District of New York, is this Court. *Id.* The writ is also appropriate under the circumstances. Among other things, the retroactivity of the Venue Act to undo a transfer that predated its enactment is

an issue of first impression.  And so, this Court's guidance will "aid in the administration of justice."  *City of New York*, 607 F.3d at 939 (citation omitted).

## ISSUE PRESENTED

Whether the Panel abused its discretion in remanding a case that had previously been transferred for coordinated proceedings under 28 U.S.C. § 1407(a) based on its conclusion that an amendment to 28 U.S.C. § 1407(g) applied retroactively to undo that transfer, despite the facts that Congress twice considered and deleted a retroactivity provision in drafting the statute and that retroactive application here would require undoing actions taken before the amendment's enactment.

## RELIEF SOUGHT

Google seeks a writ of mandamus reversing the Panel's June 5, 2023 Order that granted the State Plaintiffs' motion to remand this action to the Eastern District of Texas and instructing that the Venue Act does not apply retroactively to undo the transfer in this matter.

## STATEMENT OF FACTS

### A.  The Panel Transfers Actions Against Google With Overlapping Factual And Legal Issues To The Southern District Of New York.

In May 2020, a group of advertisers filed a putative class action in the Northern District of California, challenging Google's ad tech business under the Sherman Act and seeking damages for alleged overcharges.  Defs.' Mem. in Supp.

Mot. to Transfer Venue, *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. Apr. 30, 2021), ECF No. 1-1 at 8. That suit was followed by several more actions, class and individual, across multiple different districts, all alleging antitrust law violations based on Google's ad tech business. *Id.* Among these lawsuits was a suit filed in December 2020 by the Texas Attorney General and nine other state Attorneys General (the "State Plaintiffs") in the Eastern District of Texas. *Id.* By the spring of 2021, the antitrust litigation against Google had expanded to nineteen actions pending in sixteen districts. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1374.

Google moved in April 2021 under 28 U.S.C. § 1407(a) to transfer and centralize the pending cases, and the Panel granted Google's motion and established a MDL in the Southern District of New York. *In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1380. The Panel determined each of those actions "present[ed] common factual questions concerning," among other things, "the allegation that Google has monopolized or suppressed competition in online display advertising services in violation of federal antitrust law." *Id.* at 1375. Because of this "common factual core," the Panel concluded that "[c]entralization will promote the just and efficient conduct of the litigation." *Id.* at 1375, 1377. It explained that discovery in the State Plaintiffs' action, "which is likely to be voluminous and complex, will overlap substantially with the discovery in the other actions." *Id.* at 1377-78.

Substantive motions on key issues also would overlap across the actions, and "consistency in judicial rulings on these and other common issues will be important." *Id.* at 1378. Moreover, it found that "centralization will enhance the overall convenience of the parties, the witnesses, and the courts." *Id.*. In short, the Panel reasoned that centralizing the litigation before Judge Castel would "maximize efficiencies." *Id.* at 1376.

Since that decision, the Panel has continued to transfer additional antitrust-related actions against Google for similar reasons that the Panel cited in its initial decision. *See, e.g.*, Conditional Transfer Order, *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. March 8, 2022), ECF No. 163 (noting that "10 additional action(s)" had been transferred since the Panel's 2021 ruling, and transferring one more); *id.* at ECF No. 201 (two additional transfers on Aug. 11, 2022); *see also id.* at ECF Nos. 227, 228, 249 (additional transfers).

### B. Over A Two-Year Period, Judge Castel Makes Substantial Progress Toward Resolving The Litigation Based On The State Plaintiffs' Case.

The State Plaintiffs' action has been at the core of the MDL structure since the beginning. Indeed, Judge Castel centered the MDL around the State Plaintiffs' Third Amended Complaint, which he said would serve as the lead pleading in the MDL. *See* Pre-Trial Order No. 1, *In re Google Dig. Advert. Antitrust Litig.*, No.

1:21-md-03010 (S.D.N.Y. Aug. 13, 2021), ECF No. 4.[1]  Judge Castel would first address the State Plaintiffs' federal claims, before proceeding to address the private plaintiffs' federal claims, and then parties' state law claims.

After Google moved to dismiss the State Plaintiffs' federal claims, Judge Castel issued a 92-page opinion in which he partially granted the motion.  *In re: Google Digit. Advert. Antitrust Litig.*, No. 21-cv-6841, 2022 WL 4226932 (S.D.N.Y. Sept. 13, 2022).  Judge Castel then allowed the private plaintiffs to amend their complaints, encouraging their amendments to conform to his motion-to-dismiss ruling; and he set a briefing schedule for Google to seek dismissal of any "nonconforming" claims.  *See* Pre-Trial Order No. 2, ECF No. 309.  He also directed Google and State Plaintiffs to negotiate and stipulate to the effect of the ruling on State Plaintiffs' state law antitrust claims.  *See* Pre-Trial Order No. 4, ECF No. 392.

To maximize the efficiency of discovery, Judge Castel ordered the establishment of a Discovery Steering Committee that would include two representatives designated by the State Plaintiffs, which was more representation than any other plaintiff group received.  *See* Pre-Trial Order No. 3, ECF No. 311. Judge Castel ordered Google to produce to all plaintiffs the documents it had produced to the State of Texas in its pre-suit investigation, and he set discovery

---

[1] Unless otherwise indicated, all references to the docket are to Judge Castel's MDL docket, No. 1:21-md-03010 (S.D.N.Y.).

deadlines informed by Google's reproduction of those approximately 2 million documents to all other plaintiffs. *See* Pre-Trial Order No. 5, ECF No. 394. He also ordered that each witness be deposed only once, that all plaintiffs coordinate discovery efforts, and that all discovery be shared across all plaintiffs. *Id.* at 3.

In other words, Judge Castel has imposed an efficient procedural framework on this sprawling litigation, and the State Plaintiffs sit at the heart of that framework.

**C.    Congress Passes The Venue Act, After Repeatedly Striking Language That Would Have Made This Amendment to the MDL Statute Retroactive.**

The Venue Act amends 28 U.S.C. § 1407(g) to add the words "or a State" as follows: "Nothing in this section shall apply to any action in which the United States *or a State* is a complainant arising under the antitrust laws." *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970 (emphasis added).

As initially introduced in both the House and the Senate—though not as reported out of committee—the Act included a retroactive effective date. The proposed bill included three sections: Section 1 named the bill; Section 2 amended 28 U.S.C. § 1407 by inserting the phrase "or a State" into § 1407(g) and by striking § 1407(h); and Section 3 provided that "[t]his Act and the amendments made by this Act, *shall take effect on June 1, 2021*," a date that was *a year prior* to the bill's introduction. S. 1787, 117th Cong. (as introduced, May 24, 2022) (emphasis added);

H.R. 3460, 117th Cong. (as introduced May 21, 2022). But after it was reported out of committee, the bill was revised to remove the retroactive effective date. 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022); 168 Cong. Rec. H8252-53 (daily ed. Sept 29, 2022). The bill's language was thus changed to read as follows:

> SECTION 1. Short Title.
>    This Act may be cited as the "State Antitrust Enforcement Venue Act of 2021".
> SEC. 2. AMENDMENTS.
>    Section 1407 of title 28 of the United States Code is amended—
>       (1) in subsection (g) by inserting "or a State" after "United States", and
>       (2) by striking subsection (h).
> ~~SEC. 3. EFFECTIVE DATE~~
>    ~~This Act and the amendments made by this Act, shall take effect on June 1, 2021.~~

*Compare* S. 1787, 117th Cong. (as introduced, May 24, 2022), *with* S. 1787, 117th Cong. (as passed, June 14, 2022). The revised version of the bill, *without the retroactive effective date*, was then passed by both houses. 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022).

After passing both the House and Senate, the Venue Act was incorporated into Congress's Consolidated Appropriations Act, where Congress once again considered, and *once again rejected*, a retroactivity provision. 168 Cong. Rec. S7328, S7752 (daily ed. Dec. 19, 2022). The version that appeared in the Consolidated Appropriations Act included new language regarding "Applicability,"

providing that "[t]he amendments . . . *shall apply to any matter pending on*, or filed on or after, *the date of enactment* of this Act." *Id.* at S7752 (emphasis added). But only a few days after its introduction, Senators Klobuchar and Lee, the original sponsors of the Venue Act, proposed an amendment that struck the new language, *see* 168 Cong. Rec. S10073 (daily ed. Dec. 22, 2022), as reflected below:

> SEC. 301. VENUE FOR STATE ANTITRUST ENFORCEMENT.
>     Section 1407 of title 28, United State Code, is amended—
>     ~~(a)~~ (1) in subsection (g) by inserting "or a State" after "United States". . . .
>     (2) by striking subsection (h).
>     ~~(b)   APPLICABILITY.   The   amendments~~ ~~made by subsection (a) shall apply to any matter pending~~ ~~on, or filed on or after, the date of enactment of this Act.~~

*Compare* 168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022), *with* 168 Cong. Rec. S10007 (daily ed. Dec. 21, 2022). As at least one commenter noted, the venue provision as included in H.R. 3843 was "*no longer retroactive* as it was in previous drafts of the bill[.]" 168 Cong. Rec. H8173-74 (daily ed. Sept. 28, 2022) (letter from U.S. Chamber of Commerce included in the legislative record). The amendment passed, and both the Senate and the House passed the Consolidated Appropriations Act, 2023, as amended. 168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022). President Biden then signed the bill into

law.  *See* Consolidated Appropriations Act, 2023, Pub. L. No. 117-328, Div. GG, Title III, § 301, 136 Stat. 4459, 5970.

**D.    The State Plaintiffs Seek, And Are Granted, A Remand To The Eastern District Of Texas By The Panel.**

On February 27, 2023, two months after the Venue Act became law, the State Plaintiffs filed a motion to remand with the Panel—without first seeking a suggestion of remand from the Judge Castel despite the Panel's stated "reluctan[ce]" to grant remand in this circumstance.  R.P.J.P.M.L 10.3(a) (stating "the Panel is reluctant to order a remand absent the suggestion of the transferee judge").  Notwithstanding their active engagement with the MDL in the intervening months,[2] State Plaintiffs argued that passage of the Venue Act deprived the Southern District of New York of authority over their action.

The Panel granted State Plaintiffs' motion and issued the Remand Order at issue in this motion on June 5, 2023.  *See* State Plaintiffs' Remand Motion, No. 3010 (J.P.M.L. Feb. 27, 2023), ECF No. 229; Remand Order 4-5.  In its order, the Panel acknowledged the "long-established 'presumption against retroactive legislation,' "

---

[2] In the months after the Venue Act became law, the parties expended considerable effort continuing to litigate State Plaintiffs' case in the MDL.  The State Plaintiffs took on a key role on the Discovery Steering Committee, which was tasked with preparing discovery requests common to all plaintiffs.  The State Plaintiffs also continued to refine their claims before the MDL court.  In February 2023, State Plaintiffs sought to amend their Third Amended Complaint, ECF No. 466, which the court allowed, ECF No. 495.  State Plaintiffs' Fourth Amended Complaint was filed in the MDL on May 5, 2023.  ECF No. 541.

and the Supreme Court's "well-settled" two-step "framework for determining the reach of a newly enacted statute," but did not faithfully apply those rules. Remand Order 2-3. First, purporting to apply *Landgraf*'s first step, the Panel noted only that the particular "sentence" that Congress altered in the Venue Act did not explicitly "set[] forth the amendment's temporal reach." *Id.* The Panel declined to consider the statute's drafting history at this stage of the analysis. Second, purporting to apply *Landgraf*'s second step, the Panel noted only that the "amendment is plainly a procedural rule." *Id.* at 3. The Panel declined to consider the practical effect of applying the rule retroactively, but instead rested its analysis on the procedural nature of the change. *Id.*

Google then filed an emergency motion for a stay and administrative stay before the Panel. *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. June 12, 2023), ECF No. 251. The Panel granted Google's motion for an administrative stay and has set Google's motion for a stay pending mandamus review for the Panel's July 27, 2023 sitting. *In re Google Dig. Advert. Antitrust Litig.*, No. 3010 (J.P.M.L. June 12, 2023), ECF No. 252.

## ARGUMENT

Courts of appeals issue a writ of mandamus in "exceptional circumstances amounting to a judicial 'usurpation of power' or a 'clear abuse of discretion.' " *Cheney*, 542 U.S. at 380 (citations omitted). Three conditions must be satisfied

before such an extraordinary writ must issue: (1) the party must satisfy the burden of showing that its right to issuance of the writ is clear and indisputable, (2) the party must have no other adequate means to attain the relief it deserves, and (3) the issuing court must be satisfied that the writ is appropriate under the circumstances. *Id.* at 380-81; *see also In re United States*, 10 F.3d 931, 933 (2d Cir. 1993). Google satisfies those conditions.

## I. GOOGLE HAS A CLEAR AND INDISPUTABLE RIGHT TO MANDAMUS BECAUSE THE PANEL COMMITTED SERIOUS LEGAL ERRORS IN APPLYING THE VENUE ACT RETROACTIVELY.

This Court has explained that it will find a party has a clear and indisputable right to a writ of mandamus where a court under its supervision commits a "judicial usurpation of power or a clear abuse of discretion." *City of New York*, 607 F.3d at 943 (citation omitted). In particular, a court abuses its discretion if its ruling is based "on an erroneous view of the law." *SEC v. Rajaratnam*, 622 F.3d 159, 171 (2d Cir. 2010). That is precisely what happened here. The Panel's decision failed to adhere to the retroactivity analysis prescribed by *Landgraf*.

Under the two-step framework set out in *Landgraf*, courts first examine whether Congress "expressly prescribed the statute's proper reach." 511 U.S. at 280.[3] If it did not, leaving ambiguous whether Congress intended the statute to apply

---

[3] *Landgraf*'s two-step framework implements a more than century-old "very strong" presumption "that a statute was not meant to act retrospectively, and it ought never

retroactively, the court determines whether the new statute "would have retroactive effect, *i.e.*, whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id*. If the statute would have such an effect, it may not be applied retroactively absent Congress' clear intent. The Panel erred at both stages of this analysis.

A. **At *Landgraf*'s First Step, The Panel Wrongly Discounted Evidence Of The Venue Act's Drafting History, Which The Supreme Court Has Said Is Relevant To The Retroactivity Analysis.**

At *Landgraf* step one, the Panel looked only at the enacted text of the Venue Act, and—because the Panel "s[aw] nothing in this sentence that sets forth the amendment's temporal reach"—the Panel proceeded to *Landgraf*'s second step. Remand Order 2-3. That was error. The Supreme Court has squarely rejected reading *Landgraf* as holding "there are only two alternative sources of rules to determine its ultimate temporal reach: either an 'express command' from Congress or application of our . . . default rule" at *Landgraf*'s second step. *Lindh*, 521 U.S. at 324. Instead, "[i]n determining whether a statute's terms would produce a

_____

to receive such a construction if it is susceptible of any other." *U.S. Fid. & Guar. Co. v. United States*, 209 U.S. 306, 314 (1908). Questions of retroactivity implicate " 'familiar considerations of fair notice, reasonable reliance, and settled expectations.' " *Martin v. Hadix*, 527 U.S. 343, 358 (1999) (quoting *Landgraf*, 511 U.S. at 280).

retroactive effect . . . and in determining a statute's temporal reach generally, our normal rules of construction apply." *Id.* at 326.

Under the proper analysis, "[a]s the Court in *Landgraf* demonstrated, a court may determine congressional intent from the statutory text, by necessary implication from the statute taken as a whole, or from the statute's legislative history." *Scheidemann v. INS*, 83 F.3d 1517, 1521 (3d Cir. 1996). And "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend *sub silentio* to enact statutory language that it has earlier discarded in favor of other language." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 442-443 (1987) (citation omitted). That canon of interpretation leads to the inescapable conclusion that the Venue Act does not retroactively undo already completed transfers under the MDL statute.

Congress repeatedly considered *and removed* a retroactivity provision in drafting the Venue Act. *See Landgraf*, 511 U.S. at 262-263 (examining legislative history to determine congressional intent at first stage of the *Landgraf* test); *see also Rabin v. Wilson-Coker*, 362 F.3d 190, 199 (2d Cir. 2004) ("[W]e . . . look to legislative history to determine the intent of an ambiguous statute."). Congress first considered and rejected a section of the proposed bill that would have provided that "[t]his Act and the amendments made by this Act, *shall take effect on June 1, 2021,*" a date that was *a year prior* to the bill's introduction. S. 1787, 117th Cong. (as

introduced, May 24, 2022) (emphasis added); H.R. 3460, 117th Cong. (as introduced May 21, 2022); *see also* 168 Cong. Rec. S2935-36 (daily ed. June 14, 2022) (version passed by both houses, lacking this language).  And Congress also considered and rejected a version of the bill providing that "[t]he amendments made by subsection (a) *shall apply to any matter pending on*, or filed on or after, *the date of enactment* of this Act."  168 Cong. Rec. S7752 (daily ed. Dec. 19, 2022) (emphasis added); *see also* 168 Cong. Rec. S10077 (daily ed. Dec. 22, 2022); 168 Cong. Rec. H10528 (daily ed. Dec. 23, 2022) (final version of the bill, lacking this language).

Moreover, the language that Congress twice deleted from the Venue Act is *exactly* the type of language that the Supreme Court has said would give a statute retroactive effect.  In *Landgraf*, for example, the Court concluded that a congressional statement that "all proceedings *pending on* or commenced after *the date of enactment*" amounted to an "explicit retroactivity command."  511 U.S. at 255-256 & n.8 (emphasis added); *see also, e.g.*, *Martin*, 527 U.S. at 354 (describing *Landgraf*'s "pending on . . . the date of enactment" language as "unambiguously address[ing] the temporal reach of the statute" (quoting *Landgraf*, 511 U.S. at 260)). Congress could have made the effective date of the Venue Act a date prior to the statute's enactment.  Congress also could have provided that the Venue Act should apply to pending cases as well as cases filed after its enactment.  Congress considered both, but did neither.

Congress's repeated deletion of language that would have made the Venue Act retroactive shows that Congress did not intend the Act to apply retroactively. Congress's "deletion" of particular language "from the bill" as it was introduced in Congress "is fairly seen . . . as a deliberate elimination of" the covered concept from the enacted law. *Doe v. Chao*, 540 U.S. 614, 623 (2004). The Supreme Court has repeatedly applied that rule within its retroactivity jurisprudence. For example, in *Hamdan v. Rumsfeld*, 548 U.S. 557 (2006), the Court held a newly enacted habeas jurisdiction-stripping provision was inapplicable to pending cases because, among other things, Congress had "*rejected* earlier proposed versions of the statute that would have included [the habeas provision] within the scope of that directive [making certain provisions retroactive]." *Id.* at 579. The Court concluded that "Congress' rejection of the very language that would have achieved the result the Government urges here weighs heavily against the Government's interpretation." *Id.* at 579-580; *see also, e.g.*, *Rivers v. Roadway Express, Inc.*, 511 U.S. 298, 307-308 (1994) (similar, discussed *infra* at 20).[4] Thus, far from being some disfavored

---

[4] The Court also regularly applies this principle outside of the retroactivity context. *See, e.g.*, *Jama v. ICE*, 543 U.S. 335, 341 (2005) (explaining that "[w]e do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply"); *Doe*, 540 U.S. at 623 (rejecting an interpretation of the Privacy Act that would allow presumed damages when the "drafting history show[ed] that Congress cut out the very language in the bill that would have authorized any presumed damages"); *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 220 (1983) (noting that it is "improper for us to give a reading to the Act that Congress considered and rejected"); *Gulf Oil*

form of "legislative history," Remand Order 3, a statute's drafting history is a well-established tool of statutory interpretation in the retroactivity context.

The only reason that the Panel offered for its decision to ignore the Venue Act's drafting history was that, in the Panel's view, *Landgraf* purportedly explained that omitted statutory language is unreliable because it may simply reflect a "compromise" and it "does not tell us precisely where the compromise was struck." *See Landgraf*, 511 U.S. at 256; Remand Order 3. But, as illustrated by *Landgraf*'s companion case, *Rivers*, 511 U.S. 298, that's an overclaim, and the Panel's analysis is impossible to reconcile with Supreme Court precedent. *Rivers*, which was issued contemporaneously with *Landgraf*, addressed the temporal scope of another provision of the same statute at issue in *Landgraf* and relied on Congress's decision to delete an expressly retroactive provision of the bill.

Among other arguments, the Supreme Court in *Rivers* focused on the fact that a prior version of the bill "unambiguously declared that it was intended to 'respond to the Supreme Court's recent decisions by *restoring* the civil rights protections that were dramatically limited by those decisions,'" *id.* at 307 (citing Civil Rights Act of 1990, S. 2104, 101st Cong., 2d Sess., § 2(b)(1) (1990)), and one section of that prior bill "expressly provided that the amendment [in question] 'shall apply to all

_____

*Corp. v. Copp Paving Co.*, 419 U.S. 186, 200 (1974) (deletion of provision in committee "strongly militates against a judgment that Congress intended a result that it expressly declined to enact").

proceedings *pending on* or commenced after' " the date of the decision abrogated by the enactment of the statute, *id.* at 307-308 (emphasis added). The Court concluded from the absence of similar language in the final version of the bill that Congress did not intend for the bill to have retroactive effect. As the Court explained, because "[t]he statute that was actually enacted in 1991 contains no comparable language" to the retroactive language in the 1990 bill—that is, because "the Act lacks any direct reference to cases arising before its enactment"—the Court concluded that "the text of the Act does not support the argument that [it applies] *to cases arising before the 1991 Act's passage*." *Id.* at 308.

The Panel was wrong, as *Rivers* shows, in its conclusion that *Landgraf* "caution[s] against relying on the deletion of a retroactivity provision." Remand Order 3. The Supreme Court contemporaneously relied on precisely that type of evidence in determining the temporal effect of a different provision in the same statute. *Rivers*, 511 U.S. at 304-308. It was simply the case that, in *Landgraf*, there was no similar evidence regarding the deletion of a retroactivity provision that would have applied to the section of the statute at issue in *Landgraf*. *See id.* at 304 (explaining that the drafting-history argument "was not applicable to § 102 of the 1991 Act, the section at issue in *Landgraf*" because of the different sections' different drafting history).

Instead, the Court in *Landgraf* had merely declined to decide the temporal reach of a particular provision of the statue based on the more general argument that "one of the compromises that made it possible" to pass the 1991 Act as a whole "was an agreement *not* to include the kind of explicit retroactivity command found in the 1990 bill." *Landgraf*, 511 U.S. at 256. The argument that the Court endorsed in *Rivers*—and that Google makes here—is much more specific. Here, Congress twice removed retroactivity language from the *very* provision applied to this case in the lead-up to its passage. That "affirmative[] consider[ation]" and rejection of the "unfairness of retrospective application" is compelling evidence that the Venue Act is not retroactive. *See Landgraf*, 511 U.S. at 272–273.

\* \* \*

In short, the Panel was not free to simply take a quick look at the enacted text and having "see[n] nothing in [the Act] that sets forth the amendment's temporal reach," move on to *Landgraf*'s second step. Remand Order 2-3. Absent express statutory language, the Panel, like any other court, must "try to draw a comparably firm conclusion about the temporal reach specifically intended by applying 'our normal rules of construction.' " *Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 37 (2006) (quoting *Lindh*, 521 U.S. at 326).

Congressional intent regarding the temporal reach of a statute "may be implied as well as explicit." *Graham v. Johnson*, 168 F.3d 762, 781 (5th Cir. 1999).

Only if Congress failed to define the reach of a new statute does the Court move to the second step of *Landgraf*'s test and decide whether application of the statute or rule would have a retroactive effect. *Landgraf*, 511 U.S. at 280; *Fernandez-Vargas*, 548 U.S. at 37-38. As the drafting history shows, Congress *did* define the temporal reach of the Venue Act. And because Congress's intent is clear that the Venue Act is not retroactive, the Panel's analysis should have ended there: If Congress has expressly prescribed a statute's temporal reach, "there is no need to resort to judicial default rules." *Landgraf*, 511 U.S. at 280.

**B.     At *Landgraf*'s Second Step, The Panel Wrongly Concluded That All Procedural Rules Apply To Pending Cases, And Therefore Failed To Consider Whether The Venue Act Operates Retroactively.**

The Panel also erred when it cut short the analysis required at *Landgraf* step two by concluding that since the Venue Act is "plainly a procedural rule," it applies to "pre-enactment pending cases." Remand Order 3. That is not the correct framing or analysis under *Landgraf*, later cases applying *Landgraf*, or even the pre-*Landgraf* cases the Panel cited. As the Supreme Court explained, "the mere fact that a new rule is procedural *does not mean that it applies to every pending case*." *Landgraf*, 511 U.S. at 275 n.29 (emphasis added). The Supreme Court in *Martin* expressly re-confirmed that "it is not enough to attach a label (*e.g.*, 'procedural,' 'collateral') to the statute." 527 U.S. at 359.

Instead, even where a statute works a purely procedural change, the *Landgraf* Court instructed that a procedural change enacted while a case is pending does not mandate undoing or invalidating steps taken before the enactment. *See* 511 U.S. at 275 n.29 ("A new rule concerning the filing of complaints would not govern an action in which the complaint had already been properly filed under the old regime, and the promulgation of a new rule of evidence would not require an appellate remand for a new trial."). As Justice Scalia explained in concurring with the majority on this point, "only such *relevant activity which occurs after the effective date* of the statute is covered." *Id.* at 291 (Scalia, J., concurring in the judgments) (emphasis added). He offered the example of "[a] new rule of evidence governing expert testimony." *Id.* (Scalia, J., concurring in the judgments). For that rule, "the event relevant to retroactivity of the rule is introduction of the testimony," and consequently "[e]ven though it is a procedural rule, it would unquestionably not be applied to *testimony already taken*—reversing a case on appeal, for example, because the new rule had not been applied at a trial which antedated the statute." *Id.* at 291-292 (Scalia, J., concurring in the judgments).

A few years later in *Martin v. Hadix*, the Supreme Court applied Justice Scalia's distinction between, on the one hand, procedural rules that *do* require invalidating actions taken before the rule's enactment (which *cannot* be given retroactive effect without a clear statement), and on the other hand, procedural rules

that *do not* require invalidating past actions (which *can* be given retroactive effect without a clear statement).  527 U.S. at 358-360.  The Court held there that a cap on fee reimbursements to attorneys litigating prisoner lawsuits was impermissibly retroactive as to work already performed.  *Id.*

As the Court explained, "[a]ttaching the label 'collateral' " or "procedural" to the statute's effect "does not advance the retroactivity inquiry" because "the mere fact that a new rule is procedural does not mean that it applies to every pending case."  *Id.* at 359 (quoting *Landgraf*, 511 U.S. at 275 n.29).  Although the rule at issue in that case was procedural, "[t]he attorneys . . . had a reasonable expectation that work they performed prior to enactment" of the fee-limiting statute "in . . . compliance with the court orders would be compensated at the pre-[statute] rates as provided in the stipulated order."  *Id.* at 358.  And because the new statute "as applied to work performed before its effective date, would alter the fee arrangement post hoc by reducing the rate of compensation," the Court concluded that it could not "give effect to the . . . fees limitations, after the fact."  *Id.*

The Venue Act cannot be applied retroactively here because the "relevant activity," governed by the Venue Act has already occurred.  *Landgraf*, 511 U.S. at 291 (Scalia, J., concurring in the judgments).  The Panel already transferred the State Plaintiffs' case for coordinated proceedings before Judge Castel, more than two years ago.  *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1379.  Indeed,

the conclusion that the Panel was undoing an earlier decision—rather than making a new one—is supported by the fact that the Panel did not apply any of the ordinary transfer standards. As a general matter, the Panel will not remand a case unless the party seeking remand has shown that remand "will serve the convenience of the parties and witnesses and will promote the just and efficient conduct of [the litigation]," *In re Air Crash Disaster at Tenerife*, 461 F. Supp. 671, 672 (J.P.M.L. 1978), or that "everything that remains to be done is case-specific," *In re Wilson*, 451 F.3d 161, 173 (3d Cir. 2006). Yet the Panel declined to consider whether remand would be more convenient, more efficient, or more just. The Panel did not disturb its previous conclusion that those factors all favor the State Plaintiffs' case remaining before Judge Castel in the S.D.N.Y. *See In re Digital Advert. Antitrust Litig.*, 555 F. Supp. 3d at 1380. It simply reached back to erase that decision.

The Panel cited no case upholding retroactive application of a procedural rule to undo the relevant action in the case. Instead, to support its conclusion, the Panel cited to *Ex parte Collett*, 337 U.S. 55 (1949), and *United States v. National City Lines, Inc.*, 337 U.S. 78 (1949). Those cases, both of which pre-date *Landgraf* and *Martin*, are distinguishable from the present circumstances, and are consistent with Google's argument. Neither case supports the Panel's conclusion.

In both *Ex parte Collett* and *National City*, the Court applied 28 U.S.C. § 1404(a) to actions that were pending when a provision was enacted that had the

effect of extending application of forum-non-conveniens transfers to those cases. *See Landgraf*, 511 U.S. at 275 (construing both cases).  In both cases, the Court said that the defendant could raise a forum non conveniens argument after the amendment made that option applicable to the case.  Neither case involved *undoing* anything that had occurred in the case prior to the amendment.  Just the opposite:  The defendants invoked a newly available option to seek a transfer.  To be clear, the order of events in those cases was (1) the case was filed; (2) a statute was amended to allow transfer based on forum non conveniens; and then (3) a party sought, and a court ordered, transfer to a different district on that basis.  *Ex parte Collett*, 337 U.S. at 56–59; *National City*, 337 U.S. at 79–80.  In other words, the operation of the transfer statute in those cases *could only* be prospective—to allow for future transfer of those actions.  That is plainly not the situation here, where the transfer of the State Plaintiffs' case occurred long before the Venue Act amendment.

The "commonsense, functional" analysis that Supreme Court precedent demands points straight to the conclusion that the application of the Venue Act would have a retroactive effect in this case.  *Martin*, 527 U.S. at 357-358.  The Panel therefore should have applied the presumption against retroactivity and found that it could not reach back and undo its previous transfer of the State Plaintiffs' case.  The Panel's order omitted that analysis, simply holding that because the Act is a

" 'procedural' rule," it "did not raise retroactivity concerns when applied to cases arising before its enactment."  Remand Order 3.

## II.    A WRIT OF MANDAMUS IS THE ONLY ADEQUATE MEANS FOR GOOGLE TO SEEK REVIEW OF THE PANEL'S ORDER.

The MDL statute provides that extraordinary writs are the only means for review of the Panel's orders.  28 U.S.C. § 1407(e) ("No proceedings for review of any order of the panel may be permitted except by extraordinary writ pursuant to the provisions of title 28, section 1651, United States Code.").  And for orders after an initial transfer, writ petitions "shall be filed only in the court of appeals having jurisdiction over the transferee district"—here, the Second Circuit.  *Id.*  Given that command, Google's exclusive avenue of review is a writ petition in this Court.

Moreover, for two reasons, Google can only get effective relief by petitioning for relief now.  *First*, if Google waited until some later point in time, such as after a final judgment, the delay in seeking relief could effectively preclude such a later request.  *See Cheney*, 542 U.S. at 379 (noting laches "might bar a petition for a writ of mandamus" if the petitioner "slept upon his rights") (citations omitted).  *Second*, unlike the mine run of trial court errors, forcing parties to litigate pretrial matters outside of the MDL irreparably eliminates the efficiencies of pretrial coordination. For similar reasons, this Court and its sister circuits regularly rely on writ procedures to review transfer-related issues.  *See, e.g.*, *In re Warrick*, 70 F.3d 736, 740 (2d Cir. 1995) ("A court of appeals will issue a writ of mandamus to correct a district court's

disposition of a section 1404 transfer motion for a clear abuse of discretion."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 319 (2008) (recognizing that "the harm—inconvenience to witnesses, parties and other—will already have been done by the time the case is tried and appealed, and the prejudice suffered cannot be put back in the bottle"); *In re Apple, Inc.*, 602 F.3d 909, 912 (8th Cir. 2010) (per curiam) (courts therefore recognize that "[t]he usual post-judgment appeal process is not an adequate remedy for an improper failure to transfer" and that the writ of mandamus is therefore available).

## III. A WRIT OF MANDAMUS IS THE APPROPRIATE REMEDY TO REVERSE THE PANEL'S ERRONEOUS RULING.

This Court considers several factors to determine whether issuance of the writ is appropriate, including whether the petition presents "a novel and significant question of law" or a "legal issue whose resolution will aid in the administration of justice." *City of New York*, 607 F.3d at 939 (citation omitted). This Court has also considered whether "there is extreme need for reversal of the district court's [decision] before the case goes to judgment," *American Express Warehousing, Ltd. v. Transamerica Insurance Co.*, 380 F.2d 277, 282 (2d Cir. 1967), and whether the writ is necessary "to see that justice is done between litigants before the court," *Padovani v. Bruchhausen*, 293 F.2d 546, 548 (2d Cir. 1961). These considerations favor granting Google's petition here.

*First*, the application of the Venue Act to undo a transfer that predated its enactment is an issue of first impression. It has not previously been addressed by the Panel or this Court. At most, the language in the amendment has "been touched on only indirectly" by a district court in another circuit addressing a distinct issue from retroactivity. *In re Long Island Lighting Co.*, 129 F.3d 268, 271 (2d Cir. 1997) (applying third mandamus factor); *see United States v. Google LLC*, No. 123CV108LMBJFA, 2023 WL 2486605, at *4 (E.D. Va. Mar. 14, 2023) (examining the Venue Act's interaction with 28 U.S.C. § 1404(a)). And the parties here are not the only litigants who could be affected by a retroactive interpretation of the Venue Act. *See, e.g.*, *In re: Generic Pharms. Pricing Antitrust Litig.*, No. 16-md-2724 (E.D. Pa. transferred Aug. 5, 2016) (another MDL involving antitrust claims filed by state attorneys general).

*Second*, review is likewise appropriate because answering that unsettled question depends on applying an "established principle to an entirely new context." *Long Island Lighting*, 129 F.3d at 271 (granting mandamus review); *In re von Bulow*, 828 F.2d 94, 97 (2d Cir. 1987) (similar). In the analogous context of reviewing a court's transfer order under 28 U.S.C. § 1404(a), this Court has issued a writ where the district court legally erred and "failed to consider" "statutorily mandated" factors. *Warrick*, 70 F.3d at 740; *see also Volkswagen*, 545 F.3d at 318 (similar). And it has readily acknowledged the "availability of review" in circumstances

similar to this one. *See, e.g.*, *SongByrd, Inc. v. Estate of Grossman*, 206 F.3d 172, 176 & n.5 (2d Cir. 2000); *Red Bull Assocs. v. Best W. Int'l, Inc.*, 862 F.2d 963, 965 n.4 (2d Cir. 1988). This case fits comfortably within that line of cases because the Panel adopted a legally erroneous view of a newly amended transfer statute and made serious legal errors in its analysis.

*Third*, mandamus review in this case will also serve a broader function. Since ordinary appeals essentially never present forum-transfer issues, mandamus is the only avenue for the Court to articulate the governing legal standards and ensure consistent results. *See Volkswagen*, 545 F.3d at 319 ("Because venue transfer decisions are rarely reviewed, the district courts have developed their own tests, and they have applied these tests with too little regard for consistency of outcomes."). Indeed, because mandamus is the only vehicle through which this Court can address the Panel's errors, *see supra* at 27-28, mandamus is the only vehicle through this Court can provide guidance to the Panel on this topic.

## CONCLUSION

For the foregoing reasons, the Court should grant this petition for a writ of mandamus, reverse Panel's Remand Order, and remand to the Panel with instructions that the State Plaintiffs' case should remain in the Southern District of New York for coordinated pre-trial proceedings.

June 20, 2023                    Respectfully submitted,

                                /s/ Neal Kumar Katyal
Eric Mahr                       Neal Kumar Katyal
Andrew Ewalt                    Jessica L. Ellsworth
FRESHFIELDS BRUCKHAUS           HOGAN LOVELLS US LLP
DERINGER LLP                    555 Thirteenth Street, N.W.
700 13th Street NW, 10th Floor  Washington, D.C. 20004
Washington, D.C. 20005          (202) 637-5600
(202) 777-4500                  (202) 637-5910 (Fax)
(202) 777-4587 (Fax)            neal.katyal@hoganlovells.com
eric.mahr@freshfields.com       jessica.ellsworth@hoganlovells.com
andrew.ewalt@freshfields.com

*Counsel for Petitioner Google LLC*

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limits of Fed. R. App.

P. 21(d)(1) because, excluding the parts of the document exempted by Fed. R.

App. P. 32(f) and Fed. Cir. R. 32(b), this document contains 7752 words.

2.      This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because this document has been prepared in a proportionally spaced typeface using

Microsoft Office Word for Office 365 in 14-point Times New Roman.


<u>/s/ Neal Kumar Katyal</u>
Neal Kumar Katyal

# CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2023, I served a copy of the foregoing

document on the following counsel of record and judge by U.S. mail at the

following addresses:

Hon. Karen K. Caldwell
Judicial Panel on Multidistrict Litigation
Thurgood Marshall Federal Judiciary Building
One Columbus Circle, NE
Room G-255, North Lobby
Washington, DC 20544-0005


W. Mark Lanier (*lead counsel*)
Alex J. Brown
Zeke DeRose III
THE LANIER LAW FIRM, P.C.
10940 W. Sam Houston Parkway N. Suite 100
Houston, Texas 77064
Telephone: (713) 659-5200
Facsimile: (713) 659-2204
Mark.Lanier@LanierLawFirm.com
Alex.Brown@LanierLawFirm.com
Zeke.DeRose@LanierLawFirm.com

Ashley Keller
Admitted Pro Hac Vice
Jason A. Zweig
Brooke Clason Smith
150 N. Riverside Plaza, Suite 4100
Chicago, Illinois 60606
(312) 741-5220
KELLER POSTMAN LLC
ack@kellerpostman.com
jaz@kellerpostman.com
brooke.smith@kellerpostman.com

Zina Bash
111 Congress Avenue, Suite 500
Austin, TX 78701
(501) 690-0990
zina.bash@kellerpostman.com

*Attorneys for Plaintiff States of Texas, Idaho, Indiana, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

Ken Paxton
Attorney General
Brent Webster
First Assistant Attorney General of Texas
Grant Dorfman
Deputy First Assistant Attorney General
Aaron Reitz
Deputy Attorney General for Legal Strategy
Shawn E. Cowles
Deputy Attorney General for Civil Litigation
James R. Lloyd
Chief, Antitrust Division
Trevor Young
Deputy Chief, Antitrust Division
Office Of The Attorney General Of Texas
P.O. Box 12548
Austin, TX 78711-2548
(512) 936-1674
Brent.Webster@oag.texas.gov
Grant.Dorfman@oag.texas.gov
Aaron.Reitz@oag.texas.gov
Shawn.Cowles@oag.texas.gov
James.Lloyd@oag.texas.gov
Trevor.Young@oag.texas.gov

*Attorneys for Plaintiff State of Texas*

Treg R. Taylor
Attorney General
Jeff Pickett

Senior Assistant Attorney General, Special Litigation Section
1031 West 4th Avenue, Suite 200
Anchorage, AK 99501
907-269-5100
907-276-3697 (Fax)
jeff.pickett@alaska.gov
*Attorneys for Plaintiff State of Alaska*

Tim Griffin
Attorney General
Amanda J. Wentz
Assistant Attorney General
Office of the Arkansas Attorney General
323 Center Street, Suite 200
Little Rock, AR 72201
(501) 682-1178
Amanda.Wentz@ArkansasAG.gov

*Attorneys for Plaintiff State of Arkansas*

Ashley Moody
Attorney General
R. Scott Palmer
Interim Co-Director, Antitrust Division
John Guard
Chief Deputy Attorney General
Lee Istrail
Assistant Attorney General
Andrew Butler
Assistant Attorney General
Christopher Knight
Assistant Attorney General
Office of the Attorney General
State of Florida
PL-01 The Capitol
Tallahassee, Florida 32399
850-414-3300
scott.palmer@myfloridalegal.com

*Attorneys for Plaintiff State of Florida*

Raúl R. Labrador
Attorney General
John K. Olson
Acting Division Chief
Consumer Protection Division
Office of the Attorney General
954 W. Jefferson Street, 2nd Floor
P.O. Box 83720
Boise, Idaho 83720-0010
(208) 334-2424
john.olson@ag.idaho.gov

*Attorneys for Plaintiff State of Idaho*

Theodore E. Rokita
Attorney General
Scott Barnhart
Chief Counsel and Director of Consumer Protection
Matthew Michaloski
Deputy Attorney General
Indiana Government Center South – 5th Fl. 302
W. Washington Street
Indianapolis, IN 46204-2770
(317) 232-6309
(317) 232-7979 (Fax)
Email: scott.barnhart@atg.in.gov
Email: matthew.michaloski@atg.in.gov

*Attorneys for Plaintiff State of Indiana*

Daniel Cameron
Attorney General
J. Christian Lewis
Executive Director of Consumer Protection
Philip R. Heleringer
Deputy Director of Consumer Protection

Jonathan E. Farmer
Assistant Attorney General

Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
502-696-5300
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Jonathan.Farmer@ky.gov

*Attorneys for Commonwealth of Kentucky*

Hon. Jeff Landry
Attorney General
Michael Dupree
Christopher J. Alderman
1885 N. 3rd Street
Baton Rouge, LA 70802

James R. Dugan, II (pro hac vice)
TerriAnne Benedetto (pro hac vice)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
(504) 648-0180
(504) 649-0181 (fax)
jdugan@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

James Williams
Chehardy Sherman William, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH: (504) 833-5600
FX: (504) 833-8080

Jonathan E. Farmer
Assistant Attorney General

Office of the Attorney General
Commonwealth of Kentucky
1024 Capital Center Drive, Suite 200
Frankfort, Kentucky 40601
502-696-5300
Christian.Lewis@ky.gov
Philip.Heleringer@ky.gov
Jonathan.Farmer@ky.gov

*Attorneys for Commonwealth of Kentucky*

Hon. Jeff Landry
Attorney General
Michael Dupree
Christopher J. Alderman
1885 N. 3rd Street
Baton Rouge, LA 70802

James R. Dugan, II (pro hac vice)
TerriAnne Benedetto (pro hac vice)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
(504) 648-0180
(504) 649-0181 (fax)
jdugan@dugan-lawfirm.com
tbenedetto@dugan-lawfirm.com

James Williams
Chehardy Sherman William, LLP
Galleria Boulevard, Suite 1100
Metairie, LA 70001
PH: (504) 833-5600
FX: (504) 833-8080

jmw@chehardy.com

*Attorneys for the State of Louisiana*

Lynn Fitch
Attorney General
Hart Martin
Consumer Protection Division
Mississippi Attorney General's Office
Post Office Box 220
Jackson, Mississippi 39205
601-359-4223
601-359-4231 (Fax)
Hart.martin@ago.ms.gov

*Attorney for Plaintiff State of Mississippi*

Andrew Bailey
Attorney General
Amy Haywood
Missouri Attorney General's Office
P.O. Box 899
Jefferson City, Missouri 65102
Tel: 816-889-3090
Amy.Haywood@ago.mo.gov

*Attorneys for Plaintiff State of Missouri*

Austin Knudsen
Montana Attorney General
Rebekah French
Montana Attorney General's Office
P.O. Box 200151
Helena, MT 59620-0151
(406) 444-4500
(406) 442-1894 (Fax)
Rebekah.French@mt.gov

Charles J. Cooper
David H. Thompson
Brian W. Barnes
Harold S. Reeves
COOPER & KIRK PLLC
1523 New Hampshire Avenue, NW
Washington DC 20036
(202) 220-9620
(202) 220-9601 (Fax)
ccooper@cooperkirk.com
dthompson@cooperkirk.com
bbarnes@cooperkirk.com
hreeves@cooperkirk.com

*Attorneys for Plaintiff State of Montana*

Aaron D. Ford
Attorney General
Ernest D. Figueroa
Consumer Advocate
Michelle C. Newman
Senior Deputy Attorney General
Lucas J. Tucker
Senior Deputy Attorney General
LTucker@ag.nv.gov
Office of the Nevada Attorney General
100 N. Carson St.
Carson City, Nevada 89701
(775) 684-1100
mnewman@ag.nv.gov

*Attorneys for Plaintiff State of Nevada*

Drew H. Wrigley
Attorney General
Parrell D. Grossman
Assistant Attorney General

Elin S. Alm
Assistant Attorney General
Consumer Protection & Antitrust Division
Office of Attorney General of North Dakota
1720 Burlington Drive, Suite C
Bismarck, ND 58503-7736
(701) 328-5570
(701) 328-5568 (Fax)
pgrossman@nd.gov
ealm@nd.gov

*Attorneys for Plaintiff State of North Dakota*

Domingo Emanuelli-Hernández
Attorney General
Thaizza Rodriguez Pagán
Assistant Attorney General
PR Bar No. 17177
P.O. Box 9020192
San Juan, Puerto Rico 00902-0192
(787) 721-2900, ext. 1201, 1204
trodriguez@justicia.pr.gov

Kyle G. Bates
Hausfeld LLP
600 Montgomery Street, Suite 3200
San Francisco, CA 94111

*Attorneys for Plaintiff Commonwealth of Puerto Rico*

Alan Wilson
Attorney General
Mary Frances Jowers
Assistant Deputy Attorney General
Rebecca M. Hartner
Assistant Attorney General
W. Jeffrey Young
Chief Deputy Attorney General

C. Havird Jones, Jr.
Senior Assistant Deputy Attorney General
South Carolina Attorney General's Office
P.O. Box 11549
Columbia, South Carolina 29211-1549
Phone: 803-734-3996
Email: mfjowers@scag.gov

Charlie Condon
Charlie Condon Law Firm, LLC
880 Johnnie Dodds Blvd, Suite 1
Mount Pleasant, SC 29464
Phone: 843-884-8146
Email: charlie@charliecondon.com

James R. Dugan, II (pro hac vice)
The Dugan Law Firm
365 Canal Street
One Canal Place, Suite 1000
New Orleans, LA 70130
Phone: (504) 648-0180
Email: jdugan@dugan-lawfirm.com

*Attorneys for Plaintiff State of South Carolina*

Marty Jackley
Attorney General
Jonathan Van Patten
Assistant Attorney General
Office of the Attorney General
1302 E. Highway 14, Suite 1
Pierre, SD 57501
Tel: 605-773-3215
jonathan.vanpatten@state.sd.us

*Attorneys for Plaintiff State of South Dakota*

Sean D. Reyes

Utah Attorney General
Marie W.L. Martin
Assistant Attorney General
160 East 300 South, 5th Floor
P.O. Box 140874
Salt Lake City, UT 84114-0872
mwmartin@agutah.gov
Telephone: (801) 538-9600

*Attorneys for Plaintiff State of Utah and as counsel for the Utah Division of Consumer Protection*

/s/ Neal Kumar Katyal
Neal Kumar Katyal